UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>Plaintiff,<br><br>v.<br><br>TERRY STALLMAN, and JOHN DOES 1-5,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>2:13-cv-00409-DN<br><br>Judge David Nuffer |

Plaintiff R. Wayne Klein, as Receiver for National Note of Utah, LC and the assets of Wayne LaMar Palmer ("Receiver") filed a Motion for Partial Summary Judgment and Memorandum of Law in Support (First, Second, Third and Fifth Causes of Action) (the "Receiver's Motion for Summary Judgment") on February 26, 2015.[1]  Defendant Terry Stallman ("Defendant") filed a Response to the Receiver's Motion for Summary Judgment on July 13, 2015.[2]  After reviewing the parties' memoranda and the relevant legal authorities, the Receiver's Motion for Summary Judgment is hereby GRANTED.

## BACKGROUND

In June 2012, the Securities and Exchange Commission ("SEC") commenced a civil enforcement action styled as *Securities and Exchange Commission v. National Note of Utah LC et al.* ("Civil Enforcement Action") against Wayne LaMar Palmer ("Palmer") and National Note of Utah LC ("National Note"), alleging that Palmer had violated federal securities laws and operated National Note and its affiliated entities as a Ponzi scheme.[3]  The Receiver was

---

1 Docket no. 17, filed February 26, 2015.

2 Response to Receiver's Motion for Summary Judgment ("Response"), docket no. 30, filed July 13, 2015.

3 Civil Enforcement Action, Case No., 2:12-cv-00591-BSJ (D. Utah).

appointed in the Civil Enforcement Action as receiver for National Note, its affiliated entities and the assets of Palmer, and in that capacity the Receiver has authority to commence suit to collect assets of the receivership estate, including fraudulent transfer actions.[4]  On June 6, 2013, the Receiver commenced the present proceeding against the Defendant seeking to avoid and recover certain transfers that National Note made to the Defendant prior to the Receiver's appointment.[5]

On February 26, 2015, the Receiver filed the present Summary Judgment Motion, and on March 27, 2015, the Defendant filed a Notice of Motion and Motion for Summary Judgment ("Defendant's Motion for Summary Judgment").[6]  A Memorandum Decision and Order Denying Defendant's Motion for Summary Judgment ("Memorandum Decision") was entered on July 14, 2015. The Memorandum Decision held that this Court has subject matter jurisdiction over this proceeding, that the Defendant failed to meet his burden of establishing a good faith defense, and that the Defendant is not entitled to judgment as a matter of law on the Ponzi presumption.[7]

The Receiver's Motion for Summary Judgment which pertains to the First, Second, Third, and Fifth Causes of Action of the Receiver's Complaint will now be considered. Specifically, the Receiver alleges that the Defendant was a National Note investor who received a total of $10,713.02 in profits from National Note ("False Profits") and that those False Profits are avoidable and recoverable from the Defendant as fraudulent transfers or under theories of

---

4 *Id.* at docket no. 9 (Order Appointing Receiver and Staying Litigation) & docket no. 240 (Order Granting Motion for Leave to Commence Legal Proceedings).

5 Complaint, docket no. 2, filed June 6, 2013.

6 Defendant's Motion for Summary Judgment, docket no. 20, filed March 27, 2015.

7  Memorandum Decision, docket no. 31, filed July 14, 2015.

unjust enrichment.[8]  The Defendant opposes the Motion, again arguing that the Court lacks subject matter jurisdiction over this proceeding.[9]

## SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11]  In determining whether there is a genuine dispute as to material fact, the Court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[12]  But, when a party has properly asserted undisputed facts in accordance with Fed. R. Civ. P. 56(c) and an opposing party fails to properly address those facts as required under that Rule, the Court may "consider the fact[s] undisputed for purposes of the motion; . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or . . . issue any other appropriate order."[13]

## DISCUSSION

The Defendant's only response to the Receiver's Motion for Summary Judgment is that this Court lacks subject matter jurisdiction over this proceeding.[14]  For the reasons stated in the Memorandum Decision,[15] this argument is rejected—subject matter jurisdiction exists over this matter.

---

[8] Complaint at 2.

[9] Response at 2.

[10] Fed. R. Civ. P. 56(a).

[11] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[12] *Id.*

[13] Fed. R. Civ. P. 56(e)(2) – (4).

[14] Response at 2.

[15] Docket no. 31.

The only issue left to be determined, therefore, is whether the Receiver is entitled to summary judgment based on the facts that the Receiver has alleged and the arguments that he has made, neither of which has been contested by the Defendant.[16] The material facts set forth in the Receiver's Motion for Summary Judgment are properly asserted under Fed. R. Civ. P. 56(c) and, given the Defendant's Response, they are undisputed.[17] Based on the undisputed material facts and the applicable law, the Receiver's Motion for Summary Judgment must be granted.[18]

### A.  Summary Judgment is Appropriate on the Receiver's First, Second and Third Causes of Action for Fraudulent Transfer.

In his First, Second and Third Causes of Action, the Receiver asserts that National Note's transfers of the False Profits to the Defendant are avoidable and recoverable under the Utah Fraudulent Transfer Act ("UFTA"), codified in relevant part at Utah Code Ann. §§ 25-6-5(1), 25-6-6(1), 25-6-8(1)(a), and 26-6-9.[19]

Section 25-6-5(1) of the UFTA states that a fraudulent transfer exists as to a creditor whose claim arose before or after the transfer was made if the debtor made the transfer:

> (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation; and the debtor:
>
>> (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

---

16 See Response, docket no. 30.

17 Fed. R. Civ. P. 56(e)(2).

18 Fed. R. Civ. P. 56(e)(3).

19 Complaint at ¶¶ 32-54.

4

Section 25-6-6(1) of the UFTA provides that a transfer is fraudulent as to a creditor whose claim arose before the transfer was made if:

> (a) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>
> (b) the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation.

If a transfer is a fraudulent transfer under either § 25-6-5(1)(a) or (b) or under § 25-6-6(1), it is avoidable under § 25-6-8(1)(a) of the UFTA. An avoided transfer is recoverable from the initial transferee under UFTA § 25-6-9.

For the reasons discussed below, the False Profits paid to the Defendant constitute fraudulent transfers under UFTA §§ 25-6-5(1)(a), 25-6-5(1)(b), and 25-6-6(1). The False Profits are therefore avoidable under UFTA § 25-6-8(1)(a) and recoverable from the Defendant under section 25-6-9 of the UFTA.

### 1. First Cause of Action—Fraudulent Transfer Under Utah Code Ann. §§ 25-6-5(1)(a), 25-6-8(1) and 25-6-9(2).

In the First Cause of Action, the Receiver asserts that the False Profits are fraudulent transfers under § 25-6-5(1)(a) of the UFTA and that as such they are avoidable and recoverable under §§ 25-6-8(1) and 25-6-9(2) of the UFTA.[20]

Typically, in determining whether "actual intent" exists under § 25-6-5(1)(a), the "badges of fraud" set forth in Utah Code Ann. § 25-6-5(2) are applied. In Ponzi scheme cases, however, "actual intent" under § 26-6-5(1)(a) is established by the mere existence of the Ponzi scheme itself.[21] Thus, to avoid and recover transfers as fraudulent transfers under UFTA § 26-6-5(1)(a),

---

20 Complaint, at ¶¶ 32-38..

21 *See, e.g., Miller v. Kelley* (In re Impact Cash, Inc.), case no. 12-cv-56, 2014 WL 5437023, at *5 (D. Utah Oct. 27, 2014) (unpublished) ("Under the UFTA, once it is established that a debtor acted as a Ponzi scheme, all transfers by that entity are presumed fraudulent.").

5

the Receiver need only prove: (1) that the enterprise was a Ponzi scheme, and (2) that the Defendant received more in payments from the enterprise than he invested.[22]

A Ponzi scheme is "an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from the principal sums of newly attracted investments."[23] "In order to show that an investment scheme falls within the definition of a Ponzi scheme, the Receiver must prove by a preponderance of the evidence the *sine qua non* of a Ponzi scheme: that returns to earlier investors were paid by funds from later investors."[24] The following factors are also "typically present" in Ponzi schemes: the promise of large returns, the promise of returns with little to no risk; the promise of consistent returns; the delivery of promised returns to earlier investors to attract new investors; and the general insolvency of the investment scheme from the beginning.[25]

Paragraphs 16-21 of Part III.A(ii) of the Receiver's Motion for Summary Judgment establish material facts, supported by admissible evidence,[26] that National Note was operated as a Ponzi scheme based on the characteristics discussed above. These facts have in no way been contested by the Defendant.[27] Furthermore, paragraphs 1-15 of Part III.A(ii) of the Receiver's Motion for Summary Judgment establish that the Defendant received more from the enterprise than he invested, and these facts are not contested by the Defendant. Accordingly, the False Profits transferred to the Defendant by National Note are fraudulent transfers under UFTA § 25-

---

22 *Id.*

23 *Jobin v. McKay (In re M&L Bus. Mach. Co.)*, 84 F.3d 1330, 1332 n.1 (10th Cir. 1996).

24 *SEC v. Management Solutions, Inc.*, case no. 2:11-cv-1165, 2013 WL 4501088, at *19 (D. Utah Aug. 22, 2013) (citing *American Cancer Society v. Cook*, 675 F.3d 524 (5th Cir. 2012).

25 *Id.*

26 *See* Declaration of Receiver R. Wayne Klein, Receiver's Motion for Summary Judgment, Exh. A, docket no. 17-1; Declaration of Richard Hoffman, Receiver's Motion for Summary Judgment, Exh. B, docket no. 17-2; Testimony of Wayne L. Palmer, May 30, 2011, Receiver's Motion for Summary Judgment, Exh. C, docket no. 17-3.

27 *See* Response, docket no. 30.

6-5(1)(a). These fraudulent transfers are avoidable under UFTA § 25-6-8(1)(a), and the False Profits are recoverable from the Defendant as the initial transferee under UFTA § 25-6-9(2). Thus, summary judgment is appropriate on the Receiver's First Cause of Action.

### 1. Second Cause of Action—Fraudulent Transfer Under Utah Code Ann. §§ 25-6-5(1)(b), 25-6-8(1) and 25-6-9(2).

In the Second Cause of Action, the Receiver asserts that the False Profits are fraudulent transfers under § 25-6-5(1)(b) of the UFTA and that as such they are avoidable and recoverable under §§ 25-6-8(1) and 25-6-9(2) of the UFTA.[28]

Under § 25-6-5(1)(b), a transfer is fraudulent if it is not made for "reasonably equivalent value" and the transferor intended, believed, or reasonably should have believed that he would incur debts beyond his ability to pay as they became due. "Value" is defined in Utah Code Ann. § 25-6-4. It is well established that false profits paid in a Ponzi scheme can never be "value" as defined in § 25-6-4, much less "reasonably equivalent value" because payments "in excess of amounts invested are considered fictitious profits," they are not a "return on legitimate investment activity."[29] The payment of these "fictitious profits" does not benefit the enterprise but instead depletes "the scheme's resources faster. Accordingly, the payments [are] not for reasonably equivalent value. . . ."[30]

Here, as discussed above, the Receiver has established that National Note was a Ponzi scheme, and that the Defendant received more from the enterprise than he invested. As a result, National Note did not "receive[] anything of value in exchange for the transfers to the Defendant

---

28 Complaint, at ¶¶ 39-46.

29 *Wing v. Dockstader (In re VesCor Capital Corp.)*, case no. 08-cv-776, 2010 WL 5020959, at *5 (D. Utah Dec. 3, 2010).

30 *Id.*

in excess of his" principal investment.[31] Furthermore, based on the undisputed facts set forth in paragraph 2(a) - (f) of Part III.C(ii) of the Receiver's Motion for Summary Judgment, it cannot be disputed that National Note intended to incur, or believed or reasonable should have believed that it would incur, debts beyond its ability to pay as they became due.[32] Accordingly, the False Profits transferred to the Defendant by National Note are fraudulent transfers under UFTA § 25-6-5(1)(b). These fraudulent transfers are avoidable under UFTA § 25-6-8(1)(a), and the False Profits are recoverable from the Defendant as the initial transferee under UFTA § 25-6-9(2). Thus, summary judgment is appropriate on the Receiver's Second Cause of Action.

### 2. Third Cause of Action—Fraudulent Transfer Under Utah Code Ann. §§ 25-6-6(1), 25-6-8(1)(a) and 25-6-9(2).

In the Third Cause of Action, the Receiver asserts that the False Profits are fraudulent transfers under § 25-6-6(1) of the UFTA and that as such they are avoidable and recoverable under §§ 25-6-8(1) and 25-6-9(2) of the UFTA.[33]

Under § 25-6-6(1) of the UFTA, a transfer is fraudulent if it is not made for "reasonably equivalent value" and the debtor was insolvent or became insolvent as a result of the transfer or obligation. "Insolvency," is defined, in relevant part in, as follows:

> (1) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
>
> (2) A debtor who is generally not paying his debts as they become due is presumed to be insolvent. . . .[34]

---

31 *Klein v. Bruno,* No. 12-cv-0058, 2013 WL 6158752, at *2 (D. Utah Nov. 25, 2013).

32 Receiver's Motion for Summary Judgment, Part III.B(ii), ¶ 2, docket no. 17, (citing Part III.C(ii) ¶ 2 (a) - (f), Declaration of Receiver R. Wayne Klein, Receiver's Motion for Summary Judgment, Exh. A, docket no. 17-1, and Declaration of Richard Hoffman, Receiver's Motion for Summary Judgment Exh. B, docket no. 17-2).

33 Complaint, at ¶¶ 47-54.

34 Utah Code Ann. § 25-6-3

For the reasons set forth above, the Receiver has established that National Note was a Ponzi scheme and that the Defendant received more from National Note than he invested. Accordingly, the transfers of the False Profits to the Defendant were not "value." Furthermore, based on the undisputed facts set forth in paragraph 2(a) - (f) of Part III.C(ii) of the Summary Judgment Motion,[35] it is not disputed that National Note was insolvent at all relevant times. Accordingly, the False Profits transferred to the Defendant by National Note are fraudulent transfers under UFTA § 25-6-6(1). These fraudulent transfers are avoidable under UFTA § 25-6-8(1)(a), and the False Profits are recoverable from the Defendant as the initial transferee under UFTA § 25-6-9(2). Thus, summary judgment is appropriate on the Receiver's Third Cause of Action.

### B. Summary Judgment is Appropriate on the Receiver's Fifth Cause of Action for Unjust Enrichment.

In his Fifth Cause of Action, the Receiver asserts that the he may recover the False Profits from the Defendant because allowing the Defendant to keep the False Profits would be inequitable as an unjust enrichment.[36] Under the theory of unjust enrichment, a plaintiff must prove (1) a benefit conferred on the defendant; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.[37] These elements have been established by the Receiver in this case.

There is no dispute that the False Profits conferred a benefit on the Defendant and that the Defendant has an appreciation of that benefit.[38] Furthermore, in paragraphs 1-4 of Part III.D(ii)

---

35 Receiver's Motion for Summary Judgment at 13-14.

36 Complaint, at ¶¶ 61-67.

37 *Rawlings v. Rawlings*, 240 P.3d 754, 763 (Utah 2010) (citation omitted).

38 See Response, docket no. 20.

of the Summary Judgment Motion,[39] the Receiver establishes that allowing the Defendant to retain the False Profits would be inequitable. Here, prior to the Receiver's appointment, at least 554 investors received less from National Note than the amount that they invested, and a large percentage of those investors received absolutely no return of the money that they invested. These investors are anticipated to receive far less than 100% of the principal amount that they invested back through the receivership estate.[40] It would be inequitable to allow the Defendant to profit from this fraudulent enterprise at the expense of these investors. Thus, the Receiver's Motion for Summary Judgment as to his Fifth Cause of Action is granted.

## ORDER

For the reasons set forth above, it is hereby ORDERED that the Receiver's Motion[41] for Summary Judgment is GRANTED.

Dated October 9, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[39] Receiver's Motion for Summary Judgment at 15-16.
[40] Declaration of R. Wayne Klein, Exh. A to Receiver's Motion for Summary Judgment, docket no. 17-1.
[41] Receiver's Motion for Summary Judgment, docket no. 17.